IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


KARL KEVIN HILL,

        Petitioner,

v.                                             **Civil Action No. 2:08cv59**
                                             **Criminal Action No. 2:04cr30**
                                             **(Judge Maxwell)**

UNITED STATES OF AMERICA,

        Respondent


## REPORT AND RECOMMENDATION

### I. Introduction

On April 16, 2008, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 160). On the same day he filed his § 2255 motion, the petitioner also filed a *pro se* Motion for Bond Pending Habeas. (Dkt.# 162). On September 15, 2008, petitioner filed a *pro se* Motion to Expedite Review of Grounds, a Motion for Evidentiary Hearing and for Appointment of Counsel (Dkt.# 164).

On October 1, 2008, the undersigned determined that summary dismissal of petitioner's § 2255 motion was not warranted and directed the respondent to file an answer. (Dkt.# 165).

On October 9, 2008, petitioner filed a second *pro se* Motion for Appointed Counsel. (Dkt.# 166).

The United States filed its response to petitioner's § 2255 motion on October 31, 2008. (Dkt.# 169).

On November 7, 2008, petitioner filed a *pro se* Motion for Order to Exclude Government's

Response. (Dkt.# 170), and on November 20, 2008, a *pro se* Motion to Provide Movant with Exculpatory Documents (Dkt.# 173).

On January 7, 2009, the petitioner filed a reply to the United States' response. (Dkt.# 179).

On May 26, 2009, an Order on Pending Motions was entered by the undersigned, denying petitioner's *pro se:* Motion for Bond Pending Habeas; Motion for Appointed Counsel; Motion for an Order to Exclude Government's Response; and Motion to Provide Movant with Exculpatory Documents. The same Order on Pending Motions did not grant Petitioner's combined Motions for Expedited Review, Motion for Evidentiary Hearing and Appointed Counsel. (Dkt.# 186).

On August 6, 2009, respondent was ordered to file a supplemental response to petitioner's § 2255 motion, since its original response incompletely addressed two issues, and petitioner's reply, for the first time, raised a new claim that required a response. (Dkt.# 192). The United States filed its supplemental response on August 26, 2009. (Dkt.# 194). On September 16, 2009, the petitioner replied to the United States' supplemental response. (Dkt.#195).

## II. <u>Facts</u>

### A. <u>Conviction and Sentence</u>

On December 15, 2004, a federal grand jury charged petitioner in three counts of a three-count indictment; the indictment also included a forfeiture allegation for seven firearms. ( Dkt.# 1). Petitioner was arrested on December 22, 2004 (Dkt.# 11) and made his initial appearance on December 23, 2004. On January 14, 2005, petitioner filed a motion to suppress items seized during the search of his home and his sister's trailer, located behind his home, incident to his arrest. (Dkt.# 16). The parties submitted memorandums and presented evidence. Upon the recommendation of the undersigned, the motion to suppress the firearms seized from petitioner's residence was granted

but the motion to suppress the methamphetamine lab petitioner was operating in his sister's trailer behind his home was denied.

On February 15, 2005, a superseding indictment was returned, naming petitioner in two counts of a five-count indictment and one forfeiture allegation. (Dkt.# 23). On April 15, 2005, petitioner signed a plea agreement in which he pled guilty to Count 1 of the superseding indictment,[1] drug conspiracy involving marijuana and methamphetamine, a charge with a potential sentence of not less than five (5) nor more than forty (40) years, a fine of $2,000,000.00, a term of at least four (4) years of supervised release, and a mandatory assessment of $100.[2] In the event that petitioner was subsequently found to have a prior felony drug conviction, his maximum penalty would be imprisonment for a period of at least ten (10) years, a fine of $4,000,000.00 and a term of at least eight (8) years of supervised release. In the plea agreement, the parties stipulated and agreed that petitioner's total relevant conduct was "difficult to estimate" but would be at least two hundred (200) but less than three hundred and fifty grams (350) of substances containing methamphetamine.

Petitioner also agreed to waive his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 13. The parties realize the Guidelines are now advisory, and not mandatory. Nonetheless, the defendant waives the right to appeal or collaterally attack any sentence, or the manner in which it was determined, on any ground whatever, if the sentence is five (5) years or less. This includes any ground set forth [in] 18 U.S.C. 3742 (Review of Sentence) and 28 U.S.C. 2255 (habeas corpus). The United States

---

[1] The offense charged in Count 1 was "drug conspiracy - marijuana and methamphetamine," in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The purpose and object of the conspiracy was to unlawfully knowingly and intentionally possess with intent to distribute marijuana as designated by Title 21, U.S.C. §812(c), Schedule I9C)(10), and to manufacture and distribute more than fifty (50) grams of substances containing a detectable amount of methamphetamine, a.k.a 'crank,' a controlled substance designated by Title 21, C.F.R. § 1308.12, Schedule II(d)(2); all in violation of Title 21, U.S.C. §§ 846 and 841(b)(1)(B).

[2] Count 2 of the superseding indictment (possession of a firearm in furtherance of drug crime) and the forfeiture allegation against petitioner were dismissed.

makes the same waiver with respect to any sentence of five (5) years or higher. In the event of an appeal, each party reserves the right to argue in support of the sentence. This waiver is not intended to represent the defendant's estimation of an appropriate or reasonable sentence, and it does not prevent him from arguing for a lesser sentence.

(Plea Agreement, Dkt.#165 at 5).

On April 15, 2005, petitioner entered his guilty plea in a plea hearing in open court. Petitioner testified that he was 41 years old and had attended school to the 11th grade. (Dkt.# 88 at 4 - 5). The Government summarized or read aloud each pertinent paragraph of the plea agreement for the Court, including the paragraph 13 *supra*. The Court then asked petitioner whether he understood and agreed with the terms contained in the agreement and he said yes. (Id. at 16). The Court asked petitioner if anything further had been agreed to, either orally or in writing, that was not contained in the plea agreement, and petitioner denied that there was anything further. (Id. at 17). The Court advised petitioner that his plea agreement waived some or all of his appellate rights but did not specifically ask petitioner if he understood the waiver of his appellate relief rights. (Id. at 22). Nor did the Court advise petitioner about his post-conviction relief rights or specifically ask petitioner whether he understood that he was waiving those post-conviction relief rights. (Id. at 22). The Court did not ask specifically petitioner's counsel whether he felt that his client understood either the waiver of his appellate or post-conviction relief rights, but did ask petitioner's counsel whether he believed that petitioner understood the consequences of a guilty plea, and counsel said "Yes, Your Honor, I do." (Id. at 19). Further, petitioner's counsel said that he had gone over all of the consequences of pleading guilty with petitioner prior to the plea hearing. (Id.). The Court reviewed all the rights petitioner was giving up by pleading guilty and the petitioner acknowledged his understanding of each. (Id. at 18- 20).

The Government then presented the testimony of Trooper Christopher Shrader to establish a factual basis for the plea. (Id. at 24 - 27). The petitioner did not contest the factual basis of the plea. Petitioner then advised the Court that he was guilty of Count 1 of the indictment. (Id. at 23). Petitioner stated under oath that no one had threatened, coerced, or harassed him to get him to plead guilty. (Id. at 27). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement, that his attorney had fully and adequately represented him and had left nothing undone. (Id. at 27 - 28). When the Court asked if petitioner if he knew of any viable defense to the charges in Count 1 to which he was pleading, petitioner said "no." (Id. at 28). At the conclusion of the hearing, the Court determined that the plea was freely and voluntarily made, that petitioner was aware of the consequences of the guilty plea, and that there was a basis in fact for the tendered guilty plea. (Id. at 28 -29). The Court then accepted the tendered plea. Petitioner did not object to the Court's findings.

The Court then addressed defense counsel's earlier request for petitioner's release on bond in order to provide substantial assistance. The various conditions, restrictions and reasons for petitioner's potential release were discussed in detail by the parties. The Government recommended petitioner's release, and the Court, finding that petitioner was not likely to flee, ordered petitioner's release on personal recognizance bond. (Id. at 29 - 34).

On January 17, 2006, the Court entered an Order setting sentencing for March 23, 2006. (Dkt.# 73). On February 13, 2006, petitioner moved to withdraw his guilty plea, claiming his plea was not voluntary, but rather, coerced, as he "was under duress" at the time due to refusal of medical treatment while incarcerated in the months preceding the plea hearing. (Dkt.# 75). Petitioner alleged that he had only pled guilty in order to obtain his release on bond so that he could seek

needed medical treatment. (Dkt.# 75 at 4). On the same day, his counsel moved to withdraw. (Dkt.# 76). On February 13, 2006 new counsel was appointed. On March 23, 2006, petitioner's new counsel filed a motion to reconsider the earlier order denying the motion to suppress. (Dkt.# 100). Memorandums were again exchanged by the parties, additional hearings were held on the matter, and on June 7, 2006, a recommendation by the undersigned was made, denying both petitioner's motion to withdraw his guilty plea and his motion for reconsideration of the motion to suppress. (Dkt.# 119). Petitioner's objections to the same were overruled in an Order Adopting Report and Recommendations entered on June 30, 2006. (Dkt.# 122). Sentencing was re-set for September 14, 2006. Claiming that petitioner was in the process of providing substantial assistance, defense counsel made an oral motion to continue sentencing which was granted. Sentencing was re-scheduled for October 2, 2006. Petitioner then filed a Motion to Continue Sentencing (Dkt.# 127) on September 23, 2006; the Government objected and the motion was denied on September 27, 2006. (Dkt.# 129).

On October 2, 2006, a sentencing hearing was held. Defense counsel advised the Court that she had gone over the Pre-Sentence Report (PSR) with petitioner in preparation for the issues to be addressed that day. (Dkt.#141 at 4). The Court found that petitioner had a base offense level of 28, which became a total offense level of 27 after a two-level enhancement for possession of firearms and a three-level reduction for acceptance of responsibility. His criminal history was II, giving him a Guideline sentencing range of 78 - 97 months. However, an Information of Prior Conviction filed by the Government revealed one prior drug felony conviction, giving petitioner a statutory mandated minimum sentence of 10 years (120 months). The tentative Guideline finding was then 120 months incarceration followed by 8 years of supervised release, a fine range between $10,000 -

$4,000,000.00, community restitution and a $100 special assessment. (Id. at 6 - 7). Neither party objected to the Court's tentative findings. (Id. at 7).

The Court then addressed petitioner's five objections to the PSR: objection 1) to the government's version of the offense regarding the officer's knocking before entering; 2) to any reference being made as to firearms found inside petitioner's home, since evidence seized from that search had been suppressed as illegally-obtained evidence; 3) to the probation officer's summary of police activities outside petitioner's home; 4) to any reference to cocaine being located in petitioner's residence; and 5) to the two-level enhancement applied pursuant to Guideline 2D1.1(b)(1), incident to petitioner's possession of the firearms. Objections one through four, the objections to some of the probation officer's factual statements, were taken into consideration and advisement, but, the Court noted, because they did not affect sentencing, no ruling or factual finding would be made. Objection five was overruled; the Court found that whether illegally obtained or not, the guns remained reliable evidence that could be considered in sentencing. Further, since petitioner was already subject to a 10-year mandatory minimum sentence and the two-level enhancement for possession of firearms still did not put his minimum Guideline range at 120 months, there would be no deterrent effect from excluding the suppressed firearm evidence from sentencing.

The Court addressed petitioner's sentencing memorandum claim that he was entitled to a 5K1.1 downward departure for providing substantial assistance. The Court acknowledged receiving information from the both the probation officer and the Government indicating petitioner had not provided substantial assistance warranting such a departure. Further, since the Government declined to make a motion in favor of it, downward departure was found to be inapplicable under the

circumstances.

The Court then took up petitioner's next claim, that his prior drug conviction should not be treated as a felony, thereby subjecting him to the 10-year mandatory minimum. Because a felony is defined as an offense punishable by imprisonment for more than one year, and the statute defining petitioner's prior drug conviction in Virginia mandated imprisonment for 1 to 10 years for its violation, the Court found that it was "punishable by more than one year," and thus was sufficient to invoke the 10-year mandatory minimum, leaving the earlier Guideline findings unchanged. The Court acknowledged the sentencing memoranda received from both parties and heard argument from counsel on the sentencing issue. Defense counsel argued vigorously for a lesser sentence for petitioner. Petitioner then invoked his right of allocution. The Court imposed the Guideline range statutory mandatory minimum sentence, a term of 120 months, followed by eight years of supervised release, and payment of the special assessment of one hundred dollars. (Id. at 13 - 17). Neither party objected to the Court's findings. (Id. at 15).

The Court advised petitioner that his plea agreement specified that he retained appellate and/or collateral attack habeas corpus rights only if he received a sentence of five years or less. However, in the event that petitioner believed he could present a valid theory on which he might prevail, the Court explained the appeals process to petitioner. (Id. at 17).

As petitioner was currently released on bond, discussion was held on the issue of permitting him to self-report for detention; despite defense counsel's vigorous argument on his behalf, the Court found that petitioner was subject to mandatory detention under Title 18 U.S.C. § 3143 and he was remanded into custody.

**B. <u>Direct Appeal</u>**

On October 8, 2006, petitioner filed a Notice of Appeal. (Dkt.# 135). On appeal, petitioner raised three issues: whether the District Court abused its discretion by denying his motion to withdraw his guilty plea on two grounds: 1) that the district court improperly drew negative inferences from his assertion of attorney-client privilege and the Fifth Amendment, and 2) his motion to suppress was wrongly-decided, thus demonstrating innocence;[3] whether he waived his right to appeal the denial of his motion to suppress when he pled guilty; and whether his prior Virginia drug felony could be used to enhance his mandatory minimum sentence. On August 16, 2007, the 4th Circuit affirmed the District Court's conviction and sentence in an unpublished, *per curiam* opinion, finding that petitioner's motion to suppress evidence was properly denied; that he had failed to make a credible showing of legal innocence to support his motion to withdraw his guilty plea; and that his sentence was properly calculated. (Dkt.# 155). On August 29, 2007, petitioner filed a petition for rehearing (4th Circ. Dkt.# 40) (06-5068) which was denied on October 5, 2007 (4th Circ. Dkt.# 44) (06-5068). Mandate on the decision issued on October 15, 2007. (Dkt.# 158). Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court.

## C. Federal Habeas Corpus

### Petitioners' Contentions (Dkt.# 160)

In his § 2255 motion filed on April 16, 2008, petitioner raised five grounds of ineffective assistance of counsel (IAC):

---

[3] Petitioner's position on appeal directly contradicts his § 2255 motion position on this issue; his appeal contends that his denial of ownership of the trailer where the meth lab was discovered was involuntary and should have been suppressed, as it was incident to his illegal arrest, and that his sister lacked 'common authority' over the trailer. (Dkt.# 158-2 at 9).

In his addendum (memorandum in support) to § 2255 motion he claims he never denied ownership of the trailer, only challenged its inclusion in the search warrant. (Dkt.# 160-2 at 2).

However, in his reply to the Government's supplemental response to his § 2255 motion, he again says that when asked by the police if they could search the trailer, he "said no as it was not his trailer. It was the property of his sister." (Dkt.# 195 at 6).

(1) Whether counsel was ineffective for failing to argue that the scope of the search warrant was exceeded when officers searched the trailer behind his house;

(2) Whether counsel was ineffective for failing to argue that a "forced" confession was unlawfully obtained under "extreme torture;"

(3) Whether counsel was ineffective for "not showing that the Court invalidated the search;"

(4) Whether counsel was ineffective for failing to include a challenge "to a gun enhancement that was not proper;"

(5) Whether counsel was ineffective for not presenting a <u>Miranda</u> issue.

Petitioner's § 2255 petition also included an attached memorandum in support, titled "Addendum to the Original 2255 Application Filed from Case No. 2:04CR30-1," expanding on the issues raised in the original application as well as raising several new issues. This addendum clarified the petitioner's claims as follows:

(1) Supplementing Original Issue 4, whether petitioner's counsel was ineffective for failing to argue that the application of Guideline 2D1.1(b)(1)'s two level gun enhancement violated <u>Apprendi</u>, since there was no admission or jury finding of the presence of a firearm;

(2) Supplementing Original Issue 1, petitioner asserts that he did not deny ownership of the trailer, but rather, had challenged the inclusion of the trailer in the original warrant;

(3) Supplementing Original Issue 2, whether his counsel was ineffective for allowing the Assistant United States Attorney to state the petitioner's medical problems were a result of an addiction to methamphetamine;

(4) & (5) Whether his counsel was ineffective for "missing the point of no return" for him to withdraw his guilty plea and "blindsid[ing] him with his lack of diligence."

## **Government's Response (Dkt.# 169)**

The United States' response to petitioner's § 2255 habeas application is as follows:

(1) Motion Ground One/Ground Two of Memorandum in Support: This issue is without merit because (1) the search warrant did, in fact, specifically authorize the search of the trailer, and because (2) defense counsel extensively litigated the constitutionality of the search of the trailer;

(2) Motion Ground Two/Ground Three of Memorandum in Support: The government questions the accuracy of the petitioner's second claim as it does not recall any confession being obtained in this case and asserts that the petitioner's injury was not an issue during the investigation of the case, thus "if there was an obtained confession which the below-signed had forgotten, it wasn't contemporaneous to Mr. Hill's suffering from his leg condition, which occurred months later at the regional jail;"[4]

(3) Motion Ground Three: This issue is without merit and does not "make sense" as a District Court Order granted in part and granted in part petitioner's motion to suppress;

(4) Motion Ground Four/Ground One of Memorandum in Support:[5] is without merit as, in his plea agreement, petitioner waived any Sixth Amendment right he may have to a jury determination of any facts relevant to sentencing. This statement of Fourth Circuit law was read out in open court during the Change of Plea hearing;

(5) Memorandum in Support Grounds Four and Five: Petitioner's claims are without merit as there is nothing apparent from the record but that the petitioner comfortably and intelligently pled guilty. The government notes that it was only after the petitioner's potential 'substantial assistance' sentence reduction deal fell apart did the petitioner claim he pled guilty under duress. As this issue was previously litigated during the petitioner's motion to withdraw plea proceeding, the government takes the position that this issue was already fairly litigated by the trial court.

**Petitioner's Reply (Dkt.# 179)**

(1) Regarding petitioner's original Ground One: petitioner now asserts for the first time that there were *two* trailers behind his home ("Trailer A and Trailer B"). Petitioner contends that permission to search "Trailer A" was granted by his sister and authorized in the search warrant, but that the police actually entered and searched "Trailer B,"where the meth lab was found. Petitioner

---

[4] In its Argument, section two, (Dkt.# 169 at 7), the respondent identifies its response to this issue as addressing both Motion Ground Two/Ground Three of Memorandum in Support, but then fails to actually address petitioner's particular allegation contained in Ground Three of the memorandum. Its response addresses only the 'torture/duress' allegation of the original § 2255 motion but makes no mention of petitioner's memorandum in support Ground Three contention regarding the AUSA's characterizing his leg injury as being the result of methamphetamine addiction.

[5] Although the respondent fails to identify this as a response to both Motion Ground Four/Ground One of Memorandum in Support, clearly it was intended by petitioner to be so, as his § 2255 motion sets forth this claim as Ground Four, with no argument or supporting facts other than "(see attachment)," thereby referring the reader to his memorandum in support, where the issue is then addressed as Ground One.

claims that if only "counsel had taken the time to properly research the case," the Court would have been aware of the confusion between the trailer and "would have properly suppressed the evidence" found in "Trailer B" as "fruits of the poisonous tree."

(2) Petitioner reiterates his original Ground Two claim that counsel was ineffective for "failing to agree" [sic] that his confession was unconstitutionally obtained under 'extreme torture,'" referring the reader to the arguments set forth in his original petition.

(3) Regarding his original Ground Three: "Whether Mr. Hill's Counsel was ineffective for not showing that the Court invalidated the search," petitioner refers the reader to his argument in (1) above, regarding "the confusion between 'Trailers A and B,'" reiterating his claim that if the Court had been aware of "Trailer A" and "Trailer B" and their confusion in the search warrant, then there would have been no evidence to sustain his conviction.

(4) Regarding his original Ground Five Miranda Claim: "The Government Asserts that Petitioner's Raising of a Miranda Issue is Invalid [sic]," referring the reader to the "positions and arguments set forth in [petitioner's] . . . original § 2255 petition."[6]

**Government's Supplemental Response (Dkt.# 194)**

(1) Motion Ground Five: petitioner's Miranda claim must fail because petitioner did not identify any statement to be analyzed, whether the defendant was in custody when it was made, and whether the challenged statement was made in response to interrogation.

(2) Motion Ground Two/Memorandum in Support Ground Three: IAC for permitting the AUSA to say his leg problems were a result of his "alleged addiction to methamphetamine" rather

---

[6] The Court is unsure of what petitioner is referring to by this claim, as the Government's response actually failed to address this issue at all; after being directed to file a supplemental response, the Government later did address the Miranda claim.

than from a prior logging injury: The AUSA does not concede that any such statement to the Court was error, even if it were made before a jury, which it was not.  Further, petitioner has not shown how the absence of this comment would have changed the outcome of the proceeding.  Finally, while counsel may not have formally objected to the AUSA's specific statement, counsel's movement into evidence copies of medical records substantiating the history of petitioner's leg injury were far more persuasive to the District Judge in disputing any remark from AUSA regarding the cause of the leg problem.

(3) Motion Ground One/Memorandum in Support Ground Two: The Government denies petitioner's new claim that his counsel was ineffective for not noticing that there were two trailers on the property and the search warrant incorrectly identified the wrong one, permitting the wrong one to be illegally searched.  Defense counsel was not ineffective.  Counsel submitted photographs of petitioner's residential property into evidence: an aerial photograph of the entire property; photographs of the outbuildings, and photographs of the house and trailer, dispelling any possible confusion of what was to be searched. The search warrant clearly identifies with great specificity and particular detail the trailer that was to be searched.   The "white mobile home with red trim unattached to the right rear of the residence approximately 35 feet [from the residence]" was the trailer identified in the search warrant, and that was the trailer that was searched.

**Petitioner's Reply to Government's Supplemental Response (Dkt.# 195)**

(1) The Miranda violation claim petitioner complains of was a statement he made while he was "in handcuffs, after he had requested counsel, and prior to being read his Miranda Rights." He asserts that the basis of his Miranda claim was his response to the police officer's request to search the trailer containing the meth lab: his denial that he was the owner and his identification of his sister

as the trailer's owner.  Petitioner repeats his claim that the police's subsequent questioning of his sister to gain her permission to search the trailer, and the subsequent search of "Trailer B" were the result of "wrongful questioning" in violation of his Miranda rights.

(2) Petitioner disputes the Government's position that the outcome of the proceeding would have been no different had defense counsel objected to the AUSA's statement to the Court that his leg injury was the result of methamphetamine, insisting that the Government used his "ever increasing pain" from his leg injury to "coerce a plea of guilty," and that "knowing this" the "Court would have allowed the Petitioner to withdraw. . . [his] Plea of Guilty."  Petitioner further asserts that "at any subsequent trial a reasonable jury would have found this Petitioner not guilty based on the evidence."  Petitioner states that a "finding of innocent certainly represents a better outcome than a mandatory minimum sentence and that "[f]reedom versus incarceration [,]" satisfies the second prong of <u>Strickland</u>.

(3) Petitioner reiterates his arguments regarding the "wrong trailer" being searched, saying that the police "asked if they could search 'Trailer A[,]' [but that] Petitioner said no as it was not his trailer. It was the property of "Petitioner's Sister [sic]."  Petitioner contends that there could have been no confusion regarding which trailer was to be searched, because there were "ground level photos clearly depicting which trailer was "A" and which was "B;" Aerial photos of the property and "trailers;" [and] Three separate search warrants which state "Trailer B" belonged to this petitioner."  He claims that his counsel's "unpreparedness at the suppression hearing" permitted "'tainted evidence' [to be] . . .wrongfully admitted into the process."

### III.  <u>Analysis</u>

**A.     <u>Petitioner's Burden of Proof</u>**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## B. Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted

that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel (IAC) claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on

direct appeal.  In <u>Braxton v. United States</u>, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted

that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several

courts have held that § 2255 waivers should be subject to the same conditions and exceptions

applicable to waivers of the right to file a direct appeal.  <u>Braxton</u> at 502 (citing <u>United States v.</u>

<u>Cannady</u>, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F.

Supp. 2d 489, 493 (E.D.Va. 2001)).  Nonetheless, the Court distinguished the types of IAC claims

available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims
> on direct review. Indeed, '[i]t is well settled that a claim of
> ineffective assistance should be raised in a 28 U.S.C. § 2255 motion
> in the district court rather than on direct appeal, unless the record
> conclusively shows ineffective assistance.' <u>United States v. King</u>,
> 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception
> recognized in <u>Attar</u> applies only to a very narrow category of cases.
> In contrast, a rule that defendants are unable to waive their right to
> bring an ineffective assistance claim in a § 2255 would create a large
> exception to the scope of § 2255 waivers. In fact, such an exception
> would render all such waivers virtually meaningless because most
> habeas challenges can be pressed into the mold of a Sixth
> Amendment claim on collateral review. The Fifth Circuit has
> recognized this dynamic by noting that '[i]f all ineffective assistance
> of counsel claims were immune from waiver, any complaint about
> process could be brought in a collateral attack by merely challenging
> the attorney's failure to achieve the desired result. A knowing and
> intelligent waiver should not be so easily evaded.' <u>United States v.</u>
> <u>White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-

attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v.</u>

<u>Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction.  <u>Braxton</u>, 358

F. Supp. 2d at 503, n. 2.  Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits

to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

During the Rule 11 colloquy in the case at hand, the Court advised the petitioner that he had waived some or possibly all of his appellate rights in the plea agreement, but the Court did not specifically inquire whether petitioner understood his waiver of appellate rights contained in the plea agreement. (Dkt.# 88 at 22). This inquiry did not appropriately establish that petitioner knowingly and voluntarily waived his right to appeal. Nor did the Court advise petitioner about his post-conviction relief rights or specifically inquire of petitioner whether petitioner understood that, under the plea agreement, he was also waiving his right to seek post-conviction relief by filing a habeas corpus petition under Title 28, United States Code, § 2255. Therefore, as the preceding review of cases indicate, petitioner did not validly waive his right to file this instant petition and accordingly, it should be given full consideration.

C.   **Procedural Default**

"[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v.

Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).

In this case, Ground Five, petitioner's Miranda claim, should have been raised on direct appeal and is now procedurally defaulted, unless the petitioner can show cause and prejudice for the default. In his reply to the Government's supplemental response, the petitioner impliedly asserts that "cause" exists because his counsel was ineffective for not presenting the issue. Accordingly, petitioner's claim will be given full review.

The only statement petitioner alleges that he made while "in handcuffs, after he had requested counsel, and prior to being read his Miranda Rights" was, in response to the police officer's request to search the trailer containing the meth lab, his denial that he was the owner and his identification of his sister as the trailer's owner. This is hardly an inculpatory statement; even

assuming, *arguendo,* that petitioner was not properly advised of his Miranda rights[7] at the time he was arrested, petitioner made no confession or admission of guilt, and if any error occurred, it did not work to his "actual and substantial disadvantage." Nor, in the presence of the overwhelming evidence against him and his own admission of guilt at the plea hearing (Dkt.# 88 at 23), can petitioner demonstrate that a miscarriage of justice would result from the refusal of this Court to entertain this claim, because he cannot show actual factual innocence. This claim has no merit and is denied.

## D.     <u>Procedurally Barred Claims</u>

Before evaluating the merits of petitioner's claims, the Court must determine which of his issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976). <u>See also</u> <u>Herman v. United States</u>, 227 F.2d 332 (4th Cir. 1955). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. <u>United States v. Maybeck</u>, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. <u>See</u> <u>United States v. Richardson</u>, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); <u>White v. United States</u>, 2006 U.S. Dist. LEXIS 45122,

---

[7]As far as petitioner's complaint regarding his attorney's ineffective representation for not 'presenting this issue,' petitioner testified at his plea hearing that he was satisfied with his attorney's representation, that he had left nothing undone, and that neither he nor his attorney had found any viable important defenses to the charges against him. (Dkt.# 88 at 28).

at *7-8 (S.D. W.Va. June 20, 2006).

In petitioner's original Ground One (Memorandum in Support Ground Two), he claims: 1) that his counsel was ineffective for failing to argue that the scope of the search warrant was exceeded when officers searched his sister's trailer, located behind his house, where the meth lab was found; and 2) that he never denied ownership of the trailer, but rather, only challenged its inclusion in the original warrant. In his reply to the Government's response, for the first time, he raises the allegation that there were actually two trailers on the property, "Trailer A" and "Trailer B;" the police were given permission to search "Trailer A," but actually searched "Trailer B," which the search warrant did not cover and where the meth lab was found. Petitioner now contends that had his less-than-diligent counsel[8] realized that and timely raised the issue, the evidence found in "Trailer B" could have been rightfully suppressed as the fruit of an illegal search. Further, petitioner's original Ground Three contention that counsel was ineffective for not showing that the Court "invalidated the search" is merely an extension of the same illegal search/suppression of evidence issue.

To the extent that petitioner argues that counsel rendered ineffective assistance by failing to argue that the scope of the search warrant was exceeded when the police searched his sister's trailer, petitioner's argument fails. Not only did both petitioner's first and second counsel vigorously argue the entire suppression issue,[9] including petitioner's claim that he never denied ownership of the trailer, here, petitioner is merely re-crafting an argument already decided by the Fourth Circuit of

---

[8]Neither of petitioner's counsel ever raised this issue, so it is assumed that petitioner is asserting that both provided ineffective assistance in this area.

[9] Indeed, petitioner's first counsel's motion to suppress was partially successful; the firearms found in the home were suppressed; the methamphetamine lab in the trailer behind the home was not.

Appeals, only now with an "ineffective assistance of counsel" label tacked on to it, in an attempt to receive another complete review of an issue already decided on appeal. Petitioner cannot hold counsel ineffective for not raising an argument which was in fact raised by both his first counsel, attorney Murphy and later counsel, attorney McDiarmid. Further, this Court cannot and will not disturb a holding of the United States Court of Appeals for the Fourth District.

As for petitioner's newly-added claim that his counsel[10] was ineffective for not recognizing that there were actually two trailers on the property, allowing the search warrant to erroneously identify and permit a search of the wrong one, thus rendering the results of that search inadmissable as evidence, an aerial photograph of petitioner's property, taken on or about September 22-23, 2004,[11] was attached by defense counsel as Exhibit A to his March 27, 2006 Memorandum of Law in Support of Motion to Reconsider (Dkt.# 103). That photo clearly demonstrates petitioner's house and only one trailer,[12] identified and labeled as such by stick-on "flags" attached by his then-counsel attorney McDiarmid. There is no second trailer depicted in this defense-provided photograph of the property. Further, the search warrant clearly and specifically described the trailer to be searched as a "white mobile home with red trim unattached to the right rear of the residence approximately 35 feet away" from the house. The undisputed testimony of all the officers involved in the arrest was that this is the trailer that petitioner denied ownership of, claiming it was his sister's and that the

_____

[10] Petitioner was represented by Attorney Sean Murphy at the time of the original suppression motion. Attorney Murphy withdrew as counsel in February 2006 and attorney McDiarmid was appointed to replace him. She later reopened and relitigated the entire suppression issue.

[11] September 23, 2004 was the date of the first search warrant, when the methamphetamine lab was discovered in the trailer adjacent to petitioner's home.

[12] Petitioner's first counsel describes the trailer as being 21 feet from the back of petitioner's house. (Dkt.# 20 at 8 and 13). His second counsel describes the location of the trailer as being 35 feet from petitioner's house. (Dkt.# 103 at 5 - 6).

police would need her permission to search it. Petitioner's sister gave that permission, the trailer was searched, and the operational methamphetamine lab was revealed. It is suspicious that petitioner waited over four years, until January 7, 2009,[13] to suddenly make this claim regarding "the wrong trailer." Had there been any suggestion of true confusion regarding anything so egregious as multiple trailers and the wrong one being searched, petitioner could, would and should have raised this issue long ago. This claim has no support in the record, is without merit and should be denied.

Petitioner's original Ground Four and Memorandum in Support Ground One claim that his counsel provided ineffective assistance by failing to challenge to a gun enhancement that was not proper, and failing to argue that the application of Guideline 2D1.1(b)(1)'s two level gun enhancement violated Apprendi, has already been raised on appeal and was rejected by the Fourth Circuit Court of Appeals. Petitioner is merely attempting to attack the reasonableness of his sentence, again by applying an "ineffective assistance of counsel" label to justify re-raising the same issue in a habeas corpus petition. An attack on the reasonableness of a sentence is not a cognizable § 2255 claim. This is a transparent and impermissible attempt to obtain another bite of the apple. This claim should be denied.

Petitioner's Memorandum in Support Issue Four claim that counsel was ineffective for "missing the point of no return" in which petitioner could have withdrawn his guilty plea, likewise is procedurally barred. Petitioner raised the issue of his attempted withdrawal of his guilty plea on appeal and the Fourth Circuit Court of Appeals ruled against him, affirming his conviction and sentence. Merely re-raising the issue with an 'ineffective assistance of counsel' label in a habeas

_____

[13] Petitioner raised this claim for the first time in his reply to the Government's response to his § 2255 motion. (Dkt.# 179).

corpus petition must fail. This claim is denied.

**E.      Ground One - Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a

particular case and at the time of counsel's conduct).

Petitioner's Original Ground Two/Memorandum in Support Ground Three IAC claim that counsel failed to argue that his "forced" confession was unlawfully obtained under "extreme torture" and that his counsel should not have permitted the AUSA to state the petitioner's medical problems were a result of methamphetamine addiction rather than a logging injury are merely a continuation of the same arguments he made when attempting to withdraw his guilty plea: he only pled because ever-increasing pain from his leg injury made him desperate to be released from incarceration to obtain medical care otherwise denied to him. Not only does this claim fail factually, as petitioner was not 'denied' medical care while he was incarcerated,[14] but petitioner's own testimony at his plea hearing contradicts that intense pain and suffering "coerced" his plea:

THE COURT: Do you have any hearing or other impairment which would prevent you from fully participating in today's hearing?

MR. HILL: No, I do not. (Dkt.# 169 at 5).

THE COURT: Has anything further been agreed to either orally or in writing that is not contained within the plea agreement?

MR. HILL: Pardon, Your Honor.

THE COURT: Has anything further been agreed to either orally or in writing that is not contained within the plea agreement?

MR. HILL: I guess, Your Honor.

THE COURT: All right. Do you want to talk to your attorney about that?

*(Whereupon, petitioner and his attorney privately conferred).*

---

[14] Petitioner's 'ineffective' counsel successfully motioned for petitioner's release from incarceration in March 2005 to have his knee condition be checked by a physician. The Amended Order directing the U.S. Marshalls to transport petitioner to that appointment was entered on March 29, 2005. Petitioner entered his guilty plea on April 15, 2005.

THE COURT: All right. Has anything further been agreed to, Mr. Hill, either orally or in writing that is not contained in the plea agreement?

MR. HILL: No, Your Honor.

THE COURT: All right.

AUSA WARNER: Your Honor, I'm sorry, if I may. We have suggested and we'll be asking for his release on actually a bond at this point and that's not the plea agreement and that's what the discussions were about. So I do want to make it clear –

THE COURT: In other words, it's not an agreement because you have to submit that to the Court for the Court to say yes or no?

AUSA WARNER: Yes, sir. (Id. at 16 - 17).

THE COURT: All right. Mr. Hill, is your tendered plea of guilty in this case here this morning the

results of any threats, or coercion, or harassment by anyone in any way?

MR. HILL: No, sir, Your Honor. (Id. at 27).

After accepting petitioner's guilty plea, and the Court and counsel's discussed petitioner's

bond release conditions, saying:

THE COURT: . . . The Court has been informed that the Defendant is seeking and the Government supports, possible release on bond so that the Defendant may provide assistance.

AUSA WARNER: . . . Now as I have mentioned before, I will put this in writing today a motion and proposed order, this whole thing be under seal. If the Court would grant that, I guess the Court we discussed that already because we do want to sincerely offer him a chance at substantial assistance. We think he is in a unique position in Barbour County to be able to help us in that regard. So with that in mind, I do ask for his release on bond and ask for him to be directed to be living at his girlfriend's house in Barbour County . . . (Id. at 29 - 30).

The record clearly demonstrates that the reason for petitioner's release on bond after the plea

hearing was so that he could provide substantial assistance to the AUSA in hopes of getting a

reduction on his future sentence. There is no mention in the record of petitioner's medical condition

or denial of access to medical treatment. Further, the Court advised petitioner at the outset of the plea

hearing to feel free to ask any questions, ask for explanations as needed, and to discuss any matters with his attorney as they came to his mind; petitioner indicated his understanding. (Id. at 4). At no time did petitioner interject anything regarding his medical condition or need for care.

As noted in the Report and Recommendation (Dkt.# 119) entered by the undersigned on June 7, 2006, petitioner never challenged the voluntariness of his guilty plea for ten months after entering it and being released on bond. It was not until the AUSA announced that his office was not going to be making a 5K1.1. motion for downward departure, the pre-sentence report was completed, and the District Court's January 17, 2006 Order setting sentencing for March 23, 2006 was entered that petitioner filed his February 13, 2006 Motion to Withdraw Guilty Plea (Dkt.# 75).

Petitioner has not shown that counsel's performance was deficient or that it fell below an objective standard of reasonableness, nor that counsel's representation, even assuming, *arguendo,* any errors were committed, prejudiced him in any way. The evidence against petitioner was overwhelming, he admitted he was in fact guilty, and he intelligently and voluntarily pled.

Finally, petitioner's Memorandum in Support Ground Five contends, without elaboration, that counsel was ineffective for not keeping him "up to speed on the record and Court hearings," thereby "blindsid[ing] him with his lack of diligence." He provides no examples of instances of how or where this happened, nor does he explain how these alleged failures by counsel harmed him.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125, 1131 n.8 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). P Allegations amounting to nothing more than conclusions provide no basis for an evidentiary hearing. Here, petitioner's claim is nothing more than conclusory allegations which provide no specifics to form a basis for the Court

to grant an evidentiary hearing.

## IV.  <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Recommendation, any party shall file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are  made, and the basis for such objections.  A copy of such objections shall also be submitted to the United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: October 28, 2009

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE